Todd M. Schneider (SBN: 158253)
tschneider@schneiderwallace.com
Clint J. Brayton (SBN: 192214)
cbrayton@schneiderwallace.com
Michael D. Thomas (SBN: 226129)
mthomas@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Merrill G. Davidoff (*Pro Hac Vice*)          Steven Bennett Blau (*Pro Hac Vice*)
mdavidoff@bm.net                              sblau@bbpc-law.com
Shanon J. Carson (*Pro Hac Vice*)             Jason Brown (*Pro Hac Vice*)
scarson@bm.net                                jasontbrown@bbpc-law.com
Ellen T. Noteware (*Pro Hac Vice*)            Shelly A. Leonard (*Pro Hac Vice*)
enoteware@bm.net                              sleonard@bbpc-law.com
BERGER & MONTAGUE, P.C.                        BLAU BROWN & LEONARD LLC
1622 Locust Street                            224 West 30th Street Suite 809
Philadelphia, Pennsylvania 19103              New York, New York 10001
Telephone: (215) 875-4656                     Telephone:  (212) 725-7272
Facsimile: (215) 875 4604                     Facsimile: (212) 488-4848

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DELODDER and RICARDO MARQUES, individually and on behalf of all those similarly situated,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>AEROTEK, INC., and DOES 1-10,<br><br>　　　　　Defendants. | Case No. 2:08-cv-06044-DMG-AGR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 7, 2010<br>Time: 10:00 a.m.<br>Courtroom: 7<br>Judge: Honorable Dolly M. Gee |

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 2

   A.     Aerotek's Organizational Structure At Its California Offices ...................... 2

   B.     Aerotek Classifies Its Recruiters As Exempt .................................................. 4

   C.     In California, Aerotek's Recruiting Process Is Standardized ...................... 5

   D.     Aerotek's Recruiters All Undergo The Same Training ................................... 8

   E.     Recruiters Have The Same Job Duties Throughout California ..................... 9

       1. "Taking A Requirement" Involves Reviewing An Order From A Customer Taken By An Account Manager ...................................................... 9

       2. "Recruiting For Your Requirement" Involves Reviewing Resumes ........... 10

       3. "Screening" Involves Conducting Standard Interviews ............................... 10

       4. "Selecting" or "Submitting" Involves A Recruiter Forwarding A Resume Of A Candidate to the Account Manager ...................................... 12

       5. "Performance Monitoring" Involves Primarily Checking In With Contractors And Answering Basic Questions ............................................. 13

   F.     Recruiters Spend More than 50% of Each Work Day Engaged In Sourcing And Screening ...................................................................................... 14

   G.     Recruiters Have No Say In Decisions About The Direction Of The Business ..................................................................................................... 14

   H.     Aerotek Recruiters Are Routinely Denied Meal and Rest Periods .............. 14

   I.     Aerotek Willfully Failed Or Refused To Pay Recruiters All Compensation Owed Upon Leaving the Company Or Upon Termination ......................... 15

   J.     This Court Has Previously Determined That Class Treatment Of The Issues Involved In This Lawsuit Is Appropriate ...................................... 15

III. POINTS AND AUTHORITIES ................................................................... 16

   A.     Recruiters Are Not Exempt Employees Under California Law ................... 16

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Memorandum of Law in Support of Plaintiffs' Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
i

B.  Class Certification is Appropriate ................................................................ 19

  1. The Class Is So Numerous That Joinder Of All Members Is Impracticable.21

  2. There Are Many Questions Of Law And Fact Common To The Class ...... 22

  3. The Claims Of The Proposed Class Representatives Are Typical Of Those Of The Class............................................................................................24

  4. The Proposed Representatives And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class............................................ 25

C.  The Court Should Certify The Class Under Rule 23(b)(3) Because Common Issues Predominate And Because A Class Action Is The Superior Method For Resolving The Disputes .......................................................................... 25

  1. Common Questions Predominate ........................................................ 26

  2. A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Controversy ................................................ 29

IV.  CONCLUSION......................................................................................... 30

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

# TABLE OF AUTHORITIES

**Federal Cases**

*Alba v. Papa John's USA, Inc.,*
    No. 05-7487, 2007 WL 953849 (C.D. Cal. 2007)..............................20, 23

*Andrade v. Aerotek, Inc.,*
    No. 08-2668, 2009 WL 2757099 (Aug. 26, 2009)..............................16, 17

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 291(1997) ..............................21, 26

*Bates v. United Parcel Serv.,*
    204 F.R.D. 440 (N.D. Cal. 2001) ..............................21

*Bogosian v. Gulf Oil Corp.,*
    561 F.2d 434 (3d Cir. 1977)..............................26

*Cervantez v. Celestica Corp.,*
    253 F.R.D. 562 (C.D. Cal. 2008)..............................22

*Cruz v. Dollar Tree Store Inc.,*
    2009 WL 1458032 (N.D. Cal. 2009) ..............................23, 24

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 (S.D.N.Y. 2008)..............................20

*Gen. Tel. Co. v. EEOC,*
    446 U.S. 318 (1980) ..............................21

*Goldman v. Radioshack Corp.,*
    No. Civ.A. 03-0032, 2005 WL 1124172 (E.D. Pa. 2005)..............................20

*Haley v. Medtronic, Inc.,*
    169 F.R.D. 643 (C.D. Cal. 1996)..............................21

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..............................22, 24, 25

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ..............................21

*In re Wells Fargo Home Mortgage Overtime Pay Litigation,*
    571 F.3d 953 (9th Cir. 2009)..............................21, 27, 28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Memorandum of Law in Support of Plaintiffs' Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.,* Case No.: CV08-06044 DMG (AGR)
i

*Johannes v. Aerotek, Inc.,*
   No. 2:98-cv-06153-DT-AJW (C.D. Cal.)..........................................15

*Jordan v. County of Los Angeles,*
   669 F.2d 1311 (9th Cir. 1982) ......................................................22

*Krzesniak v. Cendant Corp.,*
   No. C 05-05156, 2007 WL 1795703 (N.D. Cal. 2007) .................20, 23

*Local Jt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2001) ......................................................26

*Staton v. Boeing,*
   327 F.3d 938 (9th Cir. 2003) ........................................................22

*Stern v. AT&T Mobility Corp.,*
   2008 WL 4382796 (C.D. Cal. 2008) ..............................................22

*Tierno v. Rite Aid Corp.,*
   2006 WL 2535056 (N.D. Cal. 2006) ..........................................20, 23

*Torres v. Gristede's Operating Corp.,*
   2006 WL 2819730 (S.D.N.Y. 2006) ...............................................20

*United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.,*
   No. 09-56578, 2010 WL 22701, slip op. at 390-91 (9th Cir. Jan. 6, 2010).........27

*Vinole v. Countrywide Home Loans, Inc.,*
   571 F.3d 935 (9th Cir. 2009) ....................................................19, 20

*Whiteway v. FedEx Kinko's Office and Print Services, Inc.,*
   2006 WL 2642528 (N.D. Cal. 2006) ..........................................20, 23

State Cases

*Eicher v. Advanced Business Integrators, Inc.,*
   151 Cal.App.4th 1363 (2007) .......................................................16

*Pellegrino v. Robert Half Internat'l., Inc.,*
   No. G039985, 2010 WL 316808 (Cal.App.4th Jan. 28, 2010) .........1, 16, 17, 18, 19

Statutes, Rules & Codes

8 Cal. Admin. Code, § 11040 .............................................................16

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Memorandum of Law in Support of Plaintiffs' Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.,* Case No.: CV08-06044 DMG (AGR)
ii

Cal. Lab. Code § 226.7......................................................................1

Cal. Lab. Code § 510.........................................................................1

Cal. Lab. Code § 512.........................................................................1

Cal. Lab. Code § 1194........................................................................1

Fed. R. Civ. P. 23......................................................................*passim*

Fed. R. Civ. P. 30............................................................................6

**Other Authorities**

7AA Wright, Miller & Kane §1778..................................................25, 26

Alba Conte & Herbert Newberg, Newberg on Class Actions,
    § 3.5 at 247 (4th ed. 2002)........................................................22

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Memorandum of Law in Support of Plaintiffs' Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
iii

## I.  **INTRODUCTION**

Plaintiffs Ryan DeLodder and Ricardo Marques ("Plaintiffs") were employed by Defendant Aerotek, Inc. ("Aerotek") as entry-level Recruiters.  Aerotek employs Recruiters in each of its California offices.  Aerotek admits that its Recruiters throughout California perform the same job duties that primarily involve searching and screening resumes, conducting phone and in-person interviews, and checking references.  These are non-exempt duties.  However, Aerotek has a statewide policy of classifying its Recruiters as exempt from California's overtime laws based on the administrative exemption.

Aerotek's policy violates the law.  Recruiters in California are not exempt employees.  *Pellegrino v. Robert Half Internat'l., Inc.*, No. G039985, 2010 WL 316808 (Cal.App.4th Jan. 28, 2010) (upholding trial court's finding that account executives at staffing agency who recruited, interviewed and evaluated candidates to be placed as temporary employees did not qualify for the administrative exemption); DLSE Opinion Letter written by Former Chief Counsel Miles Locker dated July 26, 1999 (Division of Labor Standards Enforcement specifically found that Recruiters' duties "fall within the purview of production work that is not directly related to policy making or decisions pertaining to general business operations.").  *Id*. at 958-59.

As a result of Aerotek's policy, Recruiters throughout the state are not paid overtime compensation for overtime hours worked, in violation of Labor Code §§ 510 and 1194, and Industrial Welfare Commission Wage Order 4-2001.  In addition, Aerotek does not have a policy to provide Recruiters with meal and rest periods during the workday.  This violates Labor Code §§ 226.7 and 512, as well as Wage Order 4-2001.

Class certification is appropriate pursuant to Federal Rules of Civil Procedure 23(a).  The class, consisting of at least 727 Recruiters, is sufficiently numerous.  There are many common questions of law and fact, as all potential class members

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
1

1   were subject to uniform training and were subject to uniform written policies,

2   pursuant to which they were required to perform uniform job duties.  Plaintiffs

3   DeLodder and Marques were subject to those policies and performed those duties,

4   making their claims typical of the claims of the class.  Both the named Plaintiffs,

5   who have no conflicts with the interests of the class, and their counsel, who are

6   experienced in class action litigation, are adequate.

7        Class certification is also appropriate pursuant to Rule 23(b)(3).  Common

8   questions of law and fact with respect to the legal sufficiency of Aerotek's policy

9   predominate over any individual issues of damages, and a class action is superior to

10   litigating a vast multitude of separate actions, all examining the same evidence

11   regarding the adequacy of Aerotek's policies and procedures with respect to

12   compliance with California wage and hour law.

13        For all of these reasons, Plaintiffs respectfully request that this Court certify

14   the following class:  all persons employed by Aerotek as Recruiters in California at

15   any time between August 14, 2004 and the present.

16   **II.**  **STATEMENT OF FACTS**

17       **A. Aerotek's Organizational Structure At Its California Offices**

18        Aerotek is a staffing company that provides technical, professional and

19   industrial recruiting and staffing services to its customers.[1]  Aerotek is organized

20   into eight divisions, and has 23 offices in California.[2]   The Technical Division

21

22

23   [1] *See* Declaration of John Flanigan ("Flanigan Decl.") ¶ 3, attached as Exhibit (Ex.) 1 to Plaintiffs' Request for Judicial Notice.  The Declaration of John Flanigan is also

24   attached as Ex. A to the Declaration of Clint J. Brayton In Support of Plaintiffs' Motion for Class Certification ("Brayton Decl.").   The Brayton Declaration is

25   attached to the Index of Evidence at Ex. 3.  Exhibits A through Y are attached to the

26   Brayton Declaration.  All other Exhibits and Declarations are individually attached to the Index of Evidence.

27   [2] Flanigan Decl. ¶ 4, Ex. A to Brayton Decl.; Defendant Aerotek, Inc.'s Response to

28   Plaintiff Ricardo Marques' Second Set of Special Interrogatories (No. 1), Ex. B to

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
2

1  includes:  Aviation, Contract Engineering, Energy Services, Automotive, and

2  Environmental and Engineering.[3]  The Non-Technical Division includes

3  Commercial Staffing and Professional Services.[4]  Recruiters, occupy entry-level

4  positions across divisions and service Aerotek's "product…the contractor."[5]

5      Each of Aerotek's California offices is run by a Director of Business

6  Operations ("DBO").[6]  The DBO is responsible for managing his or her office.[7]  The

7  DBO determines what divisions will be housed at a particular office and the

8  customers the office will service.[8]  Each DBO has profit and loss responsibility for

9  his or her office.[9]  It is also the DBO who is ultimately responsible for the hiring and

10 firing decisions at his or her office, including the hiring and firing of Recruiters.[10]

11

12 Brayton Decl.; "California Aerotek Recruiting and Staffing Locations", Ex. C to

13 Brayton Decl.
   [3] Flanigan Decl. ¶ 4, Ex. A to Brayton Decl.

14 [4] *Id*. at 4-5.

15 [5] Defendant Aerotek, Inc.'s Response to Plaintiff Ricardo Marques' First Set of
   Requests for Admissions (No. 4), Ex. D to Brayton Decl.; Welcome Letter from Tom

16 Thornton, President/CEO of Aerotek to Recruiter Trainees ("Thornton Letter"), Ex.

17 E to Brayton Decl.
   [6] Flanigan Decl. ¶ 8, Ex. A to Brayton Decl.; Deposition of John Flanigan ("Flanigan

18 Dep.") at 61:4-22, Ex. I to Brayton Decl.; Declaration of Jerel Eubanks ("Eubanks

19 Decl.") ¶¶ 1-8, Ex. 2 to Plaintiffs' Request for Judicial Notice.  The Declaration of
   Jerel Eubanks is also attached as Ex. G to Brayton Decl.

20 [7] Flanigan Decl. ¶ 8, Ex. A to Brayton Decl.; *see also* Eubanks Decl. ¶¶ 1-8, Ex. G to

21 Brayton Decl.; Deposition of Kevin Fujimoto ("Fujimoto Dep.") at 138:2-14, Ex. L
   to Brayton Decl.

22 [8] Flanigan Decl. ¶ 8 attached as Ex. A to Brayton Decl.; *see also* Eubanks Decl. ¶ 3,

23 attached as Ex. G to Brayton Decl.
   [9] Flanigan Decl. ¶16, Ex. A to Brayton Decl.; Flanigan Dep. at 97:3-9, Ex. I to

24 Brayton Decl.; *see also* Deposition of Jerel Eubanks dated June 9, 2009 ("Eubanks

25 Dep. I"), at 101:11-102:8, Ex. H to Brayton Decl.; Fujimoto Dep. at 138:2-14, Ex. L
   to Brayton Decl.

26 [10] Flanigan Decl. ¶ 16, Ex. A to Brayton Decl.; Flanigan Dep. at 82:3-9, Ex. I to

27 Brayton Decl.; Eubanks Dep. I at 221:2-25, Ex. H to Brayton Decl.; Fujimoto Dep.
   19:19-20:4, Ex. L to Brayton Decl.

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
3

1   Account Managers ("AMs") hold an intermediary managerial position between the

2   DBOs and the Recruiters.[11]   The AM's job duties primarily consist of business

3   development, account/customer management and Recruiter management.[12]   AMs

4   and Recruiters work in what Aerotek calls a "triangle."[13]   A triangle generally

5   consists of an AM (sometimes referred to as a Sales Manager) and two Recruiters.[14]

6   AMs supervise the Recruiters in their triangles.[15]

7   ## B. Aerotek Classifies Its Recruiters As Exempt

8        Aerotek classifies its Recruiters in California as exempt, regardless of the

9   office or division in which they work.[16]   Aerotek's Recruiters regularly work more

10  than eight (8) hours per day and more than forty (40) hours per week.[17]   Generally,

11  _____

12  [11] See "Your Career Path to Success", attached as Ex. F to Brayton Decl. Defendant

13  Aerotek, Inc.'s Response to Plaintiff Ricardo Marques' First Set of Requests for
     Admissions (No. 3), Ex. D to Brayton Decl.

14  [12] Flanigan Dep. at 99:19-21, Ex. I to Brayton Decl.; Deposition of Fred Fowler

15  ("Fowler Dep.") (Account Manager and Ryan DeLodder's former immediate
     supervisor at Aerotek) at 125:4-13, Ex. K to Brayton Decl.; Fujimoto Dep. at 14:12-

16  15:17, 16:10-17:1, Ex. L to Brayton Decl.

17  [13] Flanigan Decl. ¶ 14, Ex. A to Brayton Decl.; Eubanks Decl. ¶ 5, Ex. G to Brayton
     Decl.; Fujimoto Dep. at 16:10-17:1, Ex. L to Brayton Decl.; see Declaration of Matt

18  Carey ("Carey Decl.") ¶ 37, Ex. 5.

19  [14] Flanigan Decl. ¶ 14, Ex. A to Brayton Decl.; Flanigan Dep. at 81:18-82:2, Ex. I to
     Brayton Decl; Eubanks Decl. ¶ 5, Ex. G to Brayton Decl.; Fowler Dep. at 107:24-25,

20  Ex. K to Brayton Decl.; Declaration of Michael D. Thomas (Thomas Decl.) ¶¶ 5-6,

21  Ex.2.  For the convenience of the Court, the Declaration of Michael Thomas contains
     accurate summaries of the California Recruiter Declarations produced in the Index of

22  Exhibits, at Exs. 4-17.  The Declaration of Michael Thomas also contains specific

23  paragraph cites to each supporting section of the declarant's declaration testimony.
     [15] Fujimoto Dep. at 115:17-23, Ex. L to Brayton Decl.; Thomas Decl. ¶ 7, Ex. 2.

24  [16] Defendant's Response to Ryan DeLodder's First Set of Interrogatories (No. 14),

25  Ex. T to Brayton Decl.; Flanigan Dep. at 165:12-166:2, Ex. I to Brayton Decl.;
     Deposition of Jerel Eubanks dated November 4, 2009 ("Eubanks Dep. II") at 143:8-

26  13, Ex. J to Brayton Decl.; Declaration of Ryan DeLodder ("DeLodder Decl.") ¶ 6,

27  Ex. 18; Declaration of Ricardo Marques ("Marques Decl.") ¶ 6, Ex. 19.
     [17] Fowler Dep. at 49:2-10, 49:16-50:4, Ex. K to Brayton Decl.; DeLodder Dep. at

28  220:13-15, 226:4-14, Ex. N to Brayton Decl.; Thomas Decl. ¶¶ 8-9, Ex. 2.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
4

1 Recruiters begin working for Aerotek before 8:00 a.m. and stop working after 5:00
2 p.m.[18] Defendant admits that it does not keep records of the hours worked by its
3 Recruiters.[19]

### C. In California, Aerotek's Recruiting Process Is Standardized

5      Aerotek's recruiting process at its California offices is uniform.  Aerotek
6 markets its services to customers as an allegedly proprietary "consultative approach
7 known as [the] Perfect Fit Program."[20]  Aerotek's description of the role of its
8 Recruiters within the Perfect Fit Process, described in detail below, has five steps:
9 (1) Taking a Requirement; (2) Recruiting for your Requirement or Sourcing; (3)
10 Screening; (4) Selecting and Submitting; and (5) Performance Monitoring.[21]  This is
11 known as the "recruiting process."[22]  Aerotek Recruiters are trained in the
12 recruiting process through the use of Aerotek's Recruiter I Handbook and computer
13 training modules.[23]

---

[18] Flanigan Dep. at 158:20-159:7, Ex. I to Brayton Decl.; Fowler Dep. at 49:2-10, 49:16-50:4, Ex. K to Brayton Decl.; DeLodder Dep. at 220:13-15, 226:4-11, Ex. N to Brayton Decl.; Deposition of Ricardo Marques ("Marques Dep.") at 96:22-97:1; Ex. Q to Brayton Decl.; DeLodder Decl., ¶7, Ex. 18, Marques Decl. ¶ 7, Ex. 19; Thomas Decl. ¶¶ 8-9, Ex. 2.

[19] Defendant's Response to Plaintiff Ryan Delodder's First Set of Interrogatories, (Response No. 20), Ex. T to Brayton Decl.

[20] Fujimoto Dep. at 37:11-38:6, 46:8-47:11, Ex. L to Brayton Decl.; see "Contract Staffing and Employment Recruiting Services at Aerotek," Ex. O to Brayton Decl.

[21] Eubanks Depo. II at 34:12-35:25, Ex. J to Brayton Decl. (testifying that the fundamentals of recruiting are contained in the Recruiter I Handbook); DeLodder Dep. at 56:16-58:16, 58:13-59:9, 59:17-60:4, 60:12-18; Ex. N to Brayton Decl.; Marques Dep. at 61:22-64:4 (referencing on line training modules), Ex. Q to Brayton Dec; see also Aerotek Recruiter I Handbook, Ex. P to Brayton Dec.

[22] Eubanks Dep. II at 34:12-35:25, Ex. J to Brayton Decl.; DeLodder Dep. at 56:16-58:16, 58:13-59:9, 59:17-60:4, 60:12-18, Ex. N to Brayton Decl.; Marques Dep. at 61:22-64:4,  Ex. Q to Brayton Dec.; Thomas Decl. ¶ 12, Ex.2.

[23] See Eubanks Dep. II at 34:12-35:25, Ex. J to Brayton Decl.; DeLodder Dep. at 56:16-58:16, 58:13-59:9, 59:17-60:4, 60:12-18, Ex. N to Brayton Decl.; Marques Dep. at 61:22-64:4, Ex. Q to Brayton Dec.; Thomas Decl. ¶¶ 13-14, Ex. 2.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
5

As a result of employing this "proprietary" recruiting process, Recruiters perform the same job duties. John Flanigan, Aerotek's Vice President of Recruiting, described Recruiters' job duties as "recruiting, screening, evaluating, interviewing, selecting, reference checking, and hiring contractors to work for the client."[24] Mr. Flanigan's description of Recruiter job duties does not make any distinctions with respect to the division or office in which a Recruiter works.[25] Similarly, DBO, Jerel Eubanks, whom Aerotek designated under Fed. R. Civ. P. 30(b)(6) as the person most qualified to testify about the job duties of Recruiters in Aerotek's California offices, also testified that *all* Recruiters in California *perform the same basic duties*: *sourcing, screening, evaluating, interviewing, and submitting candidates*.[26] Eubanks further testified that the Recruiter Handbook I contained all the "fundamentals" of Recruiting and was used for training all Recruiters *regardless of division*.[27]

The uniformity of Recruiters' duties is further evidenced by Aerotek's standardized job descriptions.[28] These job descriptions make no reference to differing duties or responsibilities based on the division or office. Similarly, Aerotek's job postings do not make any distinctions in terms of job duties or responsibilities for Recruiters in different offices or divisions. Aerotek's job postings, which includes positions in over half of the Aerotek offices in California, list *identical* job duties for each position.[29] Additionally, not a single job posting

---

[24] Flanigan Decl. at ¶ 13, Ex. A to Brayton Decl.
[25] *Id.*
[26] Eubanks Dep. II at 83:11-85:8, Ex. J to Brayton Decl.
[27] Eubanks Dep. II at 34:12-35:25, Ex. J to Brayton Decl.
[28] Defendant Aerotek, Inc.'s Response to Plaintiff Ricardo Marques' First Set of Requests for Admissions (Nos. 1-2), Ex. D to Brayton Decl.
[29] Aerotek Job Postings, Ex. S to Brayton Decl.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP
Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
6

1   references any distinctive qualifications or job duties required of a Recruiter in a

2   particular division of the Company.[30]

3        Named Plaintiffs Ryan Delodder and Ricardo Marques testified that they

4   applied the same five step recruiting process and performed the same basic job

5   duties,[31] even though they worked as Recruiters in different divisions and at different

6   offices.  Mr. Marques worked at the Northridge office and was assigned to the

7   Commercial Division.[32]  Mr. DeLodder worked at the San Diego office and was

8   assigned to the Clinical Research Division.[33]

9        Furthermore, despite the limited class wide discovery that has occurred to

10  date,[34] Plaintiffs have already collected testimony and declarations from Recruiters

11  who have worked at **eight different Aerotek offices across the State of California**:

12  Northridge, San Diego, San Jose, San Ramon, Dublin, San Marcos, Oxnard, and

13  Rosemead.  Plaintiffs have collected testimony from Recruiters in **both the**

14  **Technical Division (Contract Engineers, Science, Clinical Research,**

15  **Environmental, and Energy) and Non-Technical Division (Professional Services,**

16

---

17  [30] *Id.*

18  [31] DeLodder Dep. at 56:16-57:9, 192:25-194:15, Ex. N to Brayton Decl; Marques

19  Dep. 25:9-27:14, Ex. Q to Brayton Dec.; DeLodder Decl., ¶ 5, Ex. 18, Marques Decl.
    ¶ 5, Ex. 19.

20  [32] Marques Depo. 33:17-25; 101:8-11, Ex. Q to Brayton Decl.

21  [33] DeLodder Dep. 107:15-111:6, Ex. N to Brayton Decl.

    [34] On December 18, 2009, Magistrate Judge Alicia G. Rosenberg denied Plaintiffs'
22  Motion to Compel Defendant to identify all employees who have worked as a

23  Recruiter and Account Recruiting Manager in California from August 14, 2004 to the
    present.  The Court ordered Defendants to produce a list of Recruiter and Account

24  Recruiter Managers from the San Diego Aerotek office only.  On January 11, 2010,

25  The Honorable Christina A. Snyder denied Plaintiffs Motion for Reconsideration.
    Defendant acknowledges in its Response to Plaintiff Ricardo Marques' Third Set of

26  Special Interrogatories No. 1 that "77 persons were at some time employed in the

27  Recruiter position in its San Diego, California office during the time period of
    August 14, 2004 to January 15, 2010.  *See* Defendant's Response to Plaintiff Ricardo

28  Marques' Third Set of Special Interrogatories (No. 1),  Ex. X to Brayton Decl.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
7

*Administration, Commercial, and Skilled Trades).*[35]  **All** of these Recruiters have uniformly testified that they used the same recruiting process and performed the same duties.[36]  Moreover, when Recruiters transferred offices, their job duties did not change from one office to the other.[37]

In fact, the duties of Recruiters in different divisions and offices are so similar that Recruiters are not restricted to placing candidates within their own office or division.[38]  Rather, Recruiters are encouraged to "cross-recruit" by placing contractors in multiple divisions.[39]

### D. Aerotek's Recruiters All Undergo The Same Training

All Recruiters undergo uniform training as "Recruiter Trainees."  This training lasts thirteen (13) weeks and consists of standardized computer training, in-person training, (including role-playing and observing an active Recruiter), and the completion of a workbook containing additional exercises.[40]  The same training program is used *regardless of the division to which the Recruiter will eventually be*

---

[35] *See* Thomas Decl. ¶ 11, Ex. 2.

[36] *See* Thomas Decl. ¶¶ 12, 15, Ex. 2.

[37] Carey Decl. ¶ 29, Ex. 5; Dang Decl. ¶ 27, Ex. 6; Sousa Decl. ¶¶ 14, 28, Ex. 15.

[38] Flanigan Dep. at 156:13-157:5, Ex. I to Brayton Decl.; Eubanks Dep. I. at 91:6-16, 92:12-23, Ex. H to Brayton Decl.; Eubanks Dep. II at 98:15-24, Ex. J to Brayton Decl.; Fowler Dep. at 27:17-19, Ex. K to Brayton Decl.; Fujimoto Dep. at 91:9-16, Ex. L to Brayton Decl.

[39] Flanigan Dep. at 156:13-157:5, Ex. I to Brayton Decl.; Eubanks Dep. I. at 91:6-16, 92:12-23, Ex. H to Brayton Decl.; Eubanks Dep. II at 98:15-24, Ex. J to Brayton Decl.; Fowler Dep. at 27:20-28:7, Ex. K to Brayton Decl.; Thomas Decl. ¶ 16, Ex. 2.

[40] Flanigan Decl. ¶ 10, Ex. A to Brayton Decl.; *see also* Eubanks Dep. I at 133:12-134:3, Ex. H to Brayton Decl; Eubanks Dep. II at 34:12-35:25, Ex. J to Brayton Decl.; Fowler Dep. at 15:22-17:8, Ex. K to Brayton Decl.; DeLodder Dep. at 128:11-18, Ex. N to Brayton Decl.; Marques Dep. at 63:2-19, Ex. Q to Brayton Decl.; DeLodder Decl., ¶ 5, Ex. 18, Marques Decl. ¶ 5, Ex. 19.; Thomas Decl. ¶ 19, Ex. 2; Aerotek Recruiter I Handbook, Ex. P to Brayton Decl.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
8

*assigned*.[41]   During the training, Recruiters are paid on an hourly basis, and are switched to a salary when they "complete" their training.[42]

### E. Recruiters Have The Same Job Duties Throughout California

All Recruiters submit potential applicants to their Account Managers to be placed with Aerotek's customers on a contract, contract-to-hire and permanent basis[43] In performing this role, all Recruiters perform the same job duties detailed below.

#### 1. "Taking A Requirement" Involves Reviewing An Order From A Customer Taken By An Account Manager

Aerotek calls the first step in the recruiting process "Taking a Requirement." A requirement, also referred to as a requisition, is an order from an Aerotek customer specifying the type of position the customer is attempting to fill and the details of that position, such as work location, start date and pay range.[44]   Generally, an Aerotek AM obtains the details of a requirement directly from the customer.[45] The AM then provides that requirement to the Recruiters working in his or her triangle.[46]   Recruiters do not have any  involvement in defining the customer's

---

[41] Eubanks Dep. II at 34:12-35:25 (testifying that the fundamentals of recruiting are contained in the Recruiter I Handbook), Ex. J to Brayton Decl.; Thomas Decl. ¶ 15, Ex. 2.
[42] Flanigan Depo. at 69:22-72:11, Ex. I to Brayton Decl.; Thomas Decl. ¶ 20, Ex. 2.
[43] *See* Flanigan Decl. ¶ 7, Ex. A  to Brayton Decl.
[44] Fowler Dep. at 22:3-10, Ex. K to Brayton Decl.; Fujimoto Dep. at 36:22-37:10, Ex. L to Brayton Decl.; Thomas Decl. ¶ 23, Ex. 2.
[45] Fowler Dep. at 21:12-22:10, Ex. K to Brayton Decl.; Fujimoto Dep. at 36:22-37:10, Ex. L to Brayton Decl.; DeLodder Dep. at 122:8-123:1, Ex. N to Brayton Decl.; DeLodder Decl., ¶ 5, Ex. 18, Marques Decl. ¶ 5, Ex. 19; Thomas Decl. ¶ 23, Ex. 2; Carey Decl. ¶ 40, Ex. 5.
[46] Fujimoto Dep. at 37:18-38:6, Ex. L to Brayton Decl.; DeLodder Dep. at 122:8-123:1, Ex. N to Brayton Decl.; Marques Dep. at 75:17-76:3, 77:7-78:3, Ex. Q to Brayton Decl.; Thomas Decl. ¶ 23, Ex. 2; Carey Decl. ¶ 40, Ex. 5.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
9

requisition.[47]  In fact, Recruiters have very limited customer contact in general.[48]

## 2. "Recruiting For Your Requirement" Involves Reviewing Resumes

"Recruiting for your Requirement" refers to the identification of candidates who meet the specifications of the requisition.  This process is also referred to as "sourcing."[49]  Sourcing involves routine non-exempt tasks, such as: (1) reviewing Aerotek's internal database of contractors, including reviewing the resumes of current and former contractors who are already in Aerotek's database; (2) reviewing resumes posted on internet sites, such as Monster.com, Careerbuilder.com, and Aerotek's internal databases, Thingamajob.com; (3) attending scheduled networking events and career fairs; and (4) personal referrals.[50]

## 3. "Screening" Involves Conducting Standard Interviews

Screening consists primarily of two components: a phone screen and an in-person interview.[51]  During the phone screen, a Recruiter asks the candidate a number of routine questions about the requirement.[52] The information sought from the candidate at this point is very basic and straightforward.  It generally includes

---

[47] Fowler Dep. at 38:13-18, Ex. K to Brayton Decl.; Carey Decl. ¶ 40, Ex. 5.; Thomas Decl. ¶ 23, Ex. 2;

[48] DeLodder Dep. at 122:15-124:6, 217:19-24, Ex. N to Brayton Decl; Marques Dep. at 77:22-78:3, 90:13-91:1, 78:1-3, Ex. Q to Brayton Decl.; Carey Decl. ¶ 40, Ex. 5; Thomas Decl. ¶ 23, Ex. 2.

[49] Fowler Dep. at 30:5-7, Ex. K to Brayton Decl.; *see also* Aerotek Recruiter I Handbook, Ex. P to Brayton Decl.; Andrade Dep. at 141:20-23, Ex. M to Brayton Decl.; Thomas Decl. ¶ 24, Ex. 2

[50] Fowler Dep. at 35:7-18, 62:10-16, Ex. K to Brayton Decl.; Eubanks Dep. I at 87:18-88:10, Ex. H to Brayton Decl.; Fujimoto Dep. at 43:11-44:7, Ex. L to Brayton Decl.; DeLodder Dep. at 103:19-22, 184:13-16, Ex. N to Brayton Decl.; Marques Dep. at 83:1-8, Ex. Q to Brayton Decl.; DeLodder Decl., ¶5, Ex. 18, Marques Decl. ¶ 5, Ex. 19; Thomas Decl. ¶ 24, Ex. 2.

[51] Fowler Dep. at 26:10-19, Ex. K to Brayton Decl.; Fujimoto Dep. at 58:20-59:6, Ex. L to Brayton Decl; Thomas Decl. ¶ 25, Ex. 2.

[52] Fowler Dep. at 63:18-64:8, 65:19-66:21, Ex. K to Brayton Decl.; Fujimoto Dep. at 60:2-21, Ex. L to Brayton Decl.; Andrade Dep. at 255:18-256:21, Ex. M to Brayton

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
10

1  obtaining information such as whether the candidate has reliable transportation, his

2  willing to travel, his employment eligibility, whether he is would be willing to

3  submit to a drug and background check, and other basic information.[53]  If the

4  candidate passes the phone screen, the next phase of screening consists of an in-

5  person interview.[54]   The Recruiter's role during the in-person interview is to

6  determine whether the candidate fulfills certain basic minimum requirements, such

7  as whether he or she is punctual and speaks any required languages.[55]

8      Recruiters may discuss rates of pay with a candidate.  Recruiters, however, **do**

9  **not have authority to negotiate rates of pay for candidates beyond the specific**

10 **range of acceptable pay rates contained in the requirement.**[56]

11      Finally, in the last phase of the screening, a Recruiter calls two references, and

12 requests certain specified information about the candidate from those individuals.[57]

13

14

15

---

16 Decl.; Thomas Decl. ¶ 25, Ex. 2.

17 [53] Fowler Dep. at 63:18-64:8, 65:19-66:21, Ex. K to Brayton Decl; Fujimoto Dep. at 60:2-21, Ex. L to Brayton Decl.; Andrade Dep. at 255:18-256:21, Ex. M to Brayton

18 Decl.; Thomas Decl. ¶ 25, Ex. 2

19 [54] Fowler Dep. at 26:10-19, Ex. K to Brayton Decl.; Fujimoto Dep. at 58:20-59:6, Ex. L to Brayton Decl.; Andrade Dep. at 257:8-12, Ex. M to Brayton Decl.; Thomas

20 Decl. ¶ 25, Ex. 2 .

21 [55] Fowler Dep. at 73:25-74:9, Ex. K to Brayton Decl.; Andrade Dep. at 111:6-19, Ex. M to Brayton Decl.; Thomas Decl. ¶ 25, Ex. 2 .

22 [56] Flanigan Dep. 176:13-15, Ex. I to Brayton Dec.; Fowler Dep. 91:6-11 (stating as a Recruiter, he did not negotiate rates), 147:4-22, Ex. K to Brayton Decl.; (stating Mr.

23 DeLodder had not been exposed to the part of the business that involved negotiating

24 rates of pay); Fujimoto Dep. at 80:24-81:10, 84:3-16, Ex. L to Brayton Decl.;

25 DeLodder Dep. at 133:16-20, Ex. N to Brayton Decl.; Marques Dep. at 92:1-12; 269:23-271:24, Ex. Q to Brayton Decl.; Andrade Dep. at 237:4-238:6, Ex. M to

26 Brayton Decl.

27 [57] Fowler Dep. at 26:10-19, 75:21-76:9, 76:10-77:10, Ex. K to Brayton Decl.; Fujimoto Dep. 58:20-59:6; Marques Dep. at 223:20-224:8, Ex. Q to Brayton Decl.;

28 Andrade Dep. at 114:22-115:18, Ex. M to Brayton Decl.; Thomas Decl. ¶ 25, Ex. 2.

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
11

### 4. "Selecting" or "Submitting" Involves A Recruiter Forwarding A Resume Of A Candidate to the Account Manager

The next step, called "selection" or "submittal," is to present a candidate to a customer for a given position.[58]  Generally, if a candidate fits within the parameters established by the customer, the Recruiter forwards that candidate to an AM who then determines whether the candidate should be sent to the customer for an interview.[59]  An experienced Recruiter will submit a candidate to a customer directly and copy their AM on the communication.[60]  If, after receiving a candidate's resume, a customer wants to interview the candidate for the position, a Recruiter may meet with the candidate to discuss the interview.[61]  A "placement" has occurred if a customer hires a candidate for a given position.[62]

Recruiters generally have no role in the hiring of contractors.[63]  On a limited number of occasions, Recruiters may send a worker to a job site.[64]  For example, there may be an emergency need to fill a general laborer position, known as a "Go

---

[58] Fowler Dep. at 78:1-3, Ex. K to Brayton Decl.; Fujimoto Dep. at 43:3-6, Ex. L to Brayton Decl.; Thomas Decl. ¶ 26, Ex. 2.

[59] Fowler Dep. at 80:12-81:2, 159:9-25, Ex. K to Brayton Decl.; DeLodder Dep. at 112:21-113:11, 140:10-20, 141:15-17, Ex. N to Brayton Decl.; Marques Dep. at 91:14-25, 226:22-227:18, Ex. Q to Brayton Decl.; Andrade Dep. at 109:20-110:1, 142:2-6, Ex. M to Brayton Decl.; DeLodder Decl., ¶5, Ex. 18, Marques Decl. ¶ 5, Ex. 19; Carey Decl. ¶ 41, Ex. 5.; Thomas Decl. ¶ 26, Ex. 2.

[60] Fowler Dep. at 80:12-81:2, 159:9-25, Ex. K to Brayton Decl.; Fujimoto Dep. at 128:17-25, Ex. L to Brayton Decl.

[61] DeLodder Dep. at 148:13-16, Ex. N to Brayton Decl.; Thomas Decl. ¶ 26 Ex. 2.

[62] *See* Fowler Depo. at 25:15-17, Ex. K to Brayton Decl.; Thomas Decl. ¶ 26 Ex. 2.

[63] Fowler Dep. at 80:12-81:2, 159:9-25, Ex. K to Brayton Decl.; DeLodder Dep. at 112:21-113:11, 140:10-20, 141:15-17, Ex. N to Brayton Decl; Marques Dep. at 91:14-25, 226:22-227:18, Ex. Q to Brayton Decl;  Thomas Decl. ¶ 23, Ex. 2.; Carey Decl. ¶ 41, Ex. 5.

[64] Dang Dec. ¶ 22, Ex. 6.; Lamp Dec. ¶ 9, Ex. 10; Lipzen Dec. ¶ 22, Ex. 10.

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
12

1  To Work" situation.[65]  These situations are rare and even on these occasions the

2  Recruiter fills these positions only after the AM authorizes the action.[66]

### 5. "Performance Monitoring" Involves Primarily Checking In With Contractors And Answering Basic Questions

5      Performance monitoring largely consists of occasionally checking in with a

6  customer and, potentially, answering contractor questions regarding certain topics,

7  such as time cards or insurance issues.[67]  Recruiters have no role in final decisions

8  about whether to remove or discipline contractors.[68]  Infrequently, a Recruiter may

9  be instructed by their AM to remove a contractor or discuss a performance issue

10  with a contractor.[69]  However, this is always the result of a direction from the AM,

11  not a determination made by the Recruiter.[70]  The Recruiter only becomes involved

12  with a complaint about a contractor's performance when instructed to do so by the

13  AM.[71]

14      Recruiters do not supervise any Aerotek employees.[72]  Recruiters do not have

---

16  [65] Marques Dep. at 84:9-86:1, Ex. Q to Brayton Decl.

17  [66] *Id.*

18  [67] Fowler Dep. at 92:22-93:6, Ex. K to Brayton Decl.; Fujimoto Dep. at 69:9-18, Ex. L to Brayton Decl.; Andrade Depo. at 142:22-143:15, Ex. M to Brayton Decl.; *see*

19  Thomas Decl. ¶ 28.

20  [68] Fowler Dep. at 93:7-94:4, Ex. K to Brayton Decl.; Fujimoto Dep. at 74:18-75:5, Ex. L to Brayton Decl.; Marques Dep. at 274:11-275:11, Ex. Q to Brayton Decl.;

21  Thomas Decl. ¶ 29, Ex. 2.

22  [69] Fowler Dep. at 93:7-94:4, Ex. K to Brayton Decl.; Fujimoto Dep. at 74:18-75:5, Ex. L to Brayton Decl.; Marques Dep. at 274:11-275:11, Ex. Q to Brayton Decl.;

23  Thomas Decl. ¶ 29, Ex. 2.; Carey Decl. ¶ 41, Ex. 5.

24  [70] Fujimoto Dep. at 74:18-75:5, Ex. L to Brayton Decl.; Marques Dep. at 274:11-275:11, Ex. Q to Brayton Decl.; Andrade Dep. at 251:17-252:2; Ex. M to Brayton

25  Decl.; Fowler Dep. at 93:17-94:4, Ex. K to Brayton Decl.; Thomas Decl. ¶ 29, Ex. 2.; Carey Decl. ¶ 41, Ex. 5.

26  [71] Fowler Dep. at 93:17-94:4, Ex. K to Brayton Decl.; Fujimoto Dep. at 74:18-75:5,

27  Ex. L to Brayton Decl.; Thomas Decl. ¶ 29, Ex. 2.; Carey Decl. ¶ 41, Ex. 5.

28  [72] DeLodder Decl., ¶4, Ex. 18; Marques Decl. ¶ 4, Ex. 19; Thomas Decl. ¶ 30, Ex. 2; Carey Decl. ¶ 44, Ex. 5.

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY llp

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
13

1  authority to hire, fire or discipline any other Aerotek employees.[73]

2  **F. Recruiters Spend More than 50% of Each Work Day Engaged In Sourcing And Screening.**

3  Recruiters spend almost all of their time each workday recruiting.[74]  Recruiters

4  spend more than 50% of their time each workday Sourcing and Screening, including

5  (1) reviewing requisitions; (2) searching for resumes that matched the requisitions;

6  (3) scheduling phone screens and in-person interviews; (4) conducting phone

7  screens of candidates; (5) conducting in-person interviews; and (6) checking

8  references.[75]  These are all non-exempt job duties.

9  **G. Recruiters Have No Say In Decisions About The Direction Of The Business**

10

11  Aerotek Recruiters have absolutely no role or decision-making authority with

12  respect to making decisions that determine the direction of the business, such as:

13  what products and services are offered at an office; profit and loss responsibility; or

14  business development.[76]

15  **H. Aerotek Recruiters Are Routinely Denied Meal and Rest Periods**

16  Aerotek admits that it does not have a specific policy or practice regarding

17  meal and rest periods for Recruiters.[77]  As a result, Recruiters were and are routinely

18

19  _____

[73] *Id.*

20  [74] Eubanks Dep. II 34:12-35:25, Ex. H to Brayton Decl.; Fowler  Dep. at 97:15-

21  99:13, Ex. K to Brayton Decl.; DeLodder Dep. 56:16-59:9, 59:17-60:4, 60:12-18, Ex. N to Brayton Decl., Marques Dep. 61:22-64:4, Ex. Q to Brayton Decl.; DeLodder

22  Decl., ¶ 3, Ex. 18; Marques Decl. ¶3, Ex. 19; Thomas Decl. ¶ 31, Ex. 2.

23  [75] DeLodder Decl., ¶ 3, Ex. 18; Marques Decl. ¶ 3, Ex. 19; Thomas Decl. ¶¶ 32, 33 Ex. 2; Carey Decl. ¶ 46, Ex. 5.

24  [76] Flanigan Decl. ¶¶ 8, 16 Ex. A to Brayton Decl.; Eubanks Decl. ¶¶ 1-8, Ex. G to

25  Brayton Decl.; Eubanks Dep. I at 221:5-25 Ex. H, to Brayton Decl.; Flanigan Depo.

26  at 82:3-9, Ex. I to Brayton Decl.; Fujimoto Dep. at 14:3-11, 19:18-20:4, Ex. L to Brayton Decl.; DeLodder Decl., ¶4, Ex. 18; Marques Decl. ¶ 4, Ex. 19; Carey Decl. ¶

27  36, Ex. 5.

[77] Fujimoto Dep. at 101:15-102:2, 104:4-11, Ex. L to Brayton Decl; Fowler Dep.

28  155:7-19, 158: 7-23, Ex. K to Brayton Decl.

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
14

1  denied meal and rest breaks.[78]

2  **I. Aerotek Willfully Failed Or Refused To Pay Recruiters All**
3  **Compensation Owed Upon Leaving the Company Or Upon**
   **Termination**
4

5  Despite knowledge of the hours worked by Recruiters, Aerotek did not pay

6  Recruiters at one-and-one-half times their regular rate of pay when they worked

7  more than eight hours per day or forty hours per week.[79]  Furthermore, Aerotek did

8  not pay Recruiters an extra hour of pay for each day they worked during their meal

9  period or an extra hour of pay for each day they worked during their rest period.[80]

10 **J. This Court Has Previously Determined That Class Treatment Of The**
   **Issues Involved In This Lawsuit Is Appropriate**
11

12 On July 30, 1998, a previous class action lawsuit was filed against Aerotek in

13 this Court, claiming that Aerotek Technical Recruiters were misclassified as exempt

14 employees under California labor law and under the Fair Labor Standards Act.  *See*

15 *Johannes v. Aerotek, Inc.*, No. 2:98-cv-06153-DT-AJW (C.D. Cal.).  These

16 Technical Recruiters performed substantially the same jobs as Aerotek's current

17 California Recruiters.  *See Johannes*, Apr. 8, 1999 Opinion and Order granting in

18 part Plaintiffs' Motion for Class Certification, attached as Exhibit Y to the

19 Declaration of Clint Brayton ("Technical Recruiters are the persons employed by

20 defendants to locate and assign temporary employees.  These Technical Recruiters

21 (also 'recruiters') gather information on potential temporary employees and locate

22 suitable employees ...").  On April 8, 1999, then District Judge Paez certified a class

23 of persons employed by Aerotek as Technical Recruiters in the State of California,

24 holding that "class determination of these issues would **clearly** advance the goals of

25 ────────────────────

26 [78] Thomas Decl. ¶¶ 37-38, Ex. 2; *see also* Fujimoto Dep. at 101:15-102:2, 104: 4-11,
27 Ex. L to Brayton Decl; Fowler Dep. at 155:7-19, 158: 7-23, Ex. K to Brayton Decl.
   [79] Thomas Decl. ¶¶ 40, 41, Ex. 2.
28 [80] Thomas Decl. ¶ 39, Ex. 2.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
15

1   judicial economy and efficiency." *Id.* at 14 (emphasis added).[81]  The same rationale

2   applies to this motion.

3   **III.   POINTS AND AUTHORITIES**

4      **A. Recruiters Are Not Exempt Employees Under California Law**

5          In order to prove that Plaintiffs are exempt under the administrative

6   exemption, Aerotek bears the burden of showing that its Recruiters:  (1) perform

7   office or non-manual work directly related to the employer's management policies

8   or general business operations; (2) customarily and regularly exercise independent

9   judgment; (3) perform work along technical lines requiring special training or

10  specialized assignments and tasks under only general supervision; (4) be engaged in

11  the activities meeting the test for the exemption at least 50 percent of the time; and

12  (5) earn twice the state's minimum wage.  *Eicher v. Advanced Business Integrators,*

13  *Inc.*, 151 Cal.App.4th 1363, 1371 (2007) (citing 8 Cal. Admin. Code, §

14  11040(a)(2)(a)(I), (b), (d), (f)).

15         In *Pellegrino  v. Robert Half International Inc.*, 2010 WL 316808

16  (Cal.App.4th  Jan. 28, 2010), the Court of Appeal upheld a trial court's finding that

17  account executives at a staffing agency, Robert Half International ("RHI"), did not

18  qualify for California's administrative exemption.  RHI, a temporary staffing

19  agency, similar to Aerotek, employed account executives whose job was to recruit,

20  interview and evaluate candidates for placement as temps.  *Id.* at *2.

21

22

23  _____

24  [81] Defendant will cite to the District of Maryland's decision in *Andrade v. Aerotek,*
    *Inc.*, in which the court denied in part the plaintiffs' motion for conditional

25  certification of a nationwide class action under the Fair Labor Standards Act.
    *Andrade v. Aerotek, Inc.*, No. 08-2668, 2009 WL 2757099 (Aug. 26, 2009).  While

26  Plaintiffs believe that motion was wrongly decided, this case is distinguishable from
    the nationwide FLSA claim in *Andrade*.  Under California law, Recruiters are not

27  exempt employees.  Moreover, Plaintiffs, here, are not asking the Court to certify a

28  nationwide class.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
16

1 | Six RHI account executives sued RHI alleging that they were intentionally
2 | misclassified under California wage and hour laws. *Id.* at *3.

3 |     The Court of Appeal noted the following regarding the facts:  RHI had several
4 | divisions including the following: 1) accounting and finance (which placed high
5 | level individuals in related services); 2) legal (which placed attorneys, paralegals,
6 | legal support specialist and law firm administrators); 3) creative group (which
7 | placed creative web developers, marketing and advertising individuals); and 4) an
8 | administrative staffing team. *Id.* at * 2.  The duties and responsibilities of an
9 | account executive involved recruiting, interviewing, and evaluation of candidates to
10 | be placed as temporary employees, selecting and placing candidates on job orders
11 | and assisting clients with their call-in business needs and new business
12 | development. *Id.*

13 |     Account executives were expected to perform three major functions on a
14 | three-week rotating basis broken down into 1) a sales week or marketing week, 2) a
15 | desk week, and 3) a recruiting week. *Id.*  Account executives also participated in
16 | white board meetings at least twice a day where they listed their daily goals. *Id.*
17 | Each account executive was "expected to consider the clients and candidates" he or
18 | she worked with as his or her book of business. *Id.* at * 3.  Account executives were
19 | evaluated based on how well they met sales production minimum requirements and
20 | the number of hours that were billed to clients for services provided by clients. *Id.*
21 | Account executives did not set policy for RHI and were expected to operate within
22 | the policy guidelines that were provided to them. *Id.*  Account executives did not
23 | make recommendations to a client regarding how to staff projects. *Id.*  The account
24 | executive's job was to fill the orders as they came in. *Id.*  If a client desired to
25 | terminate a candidate's services, the client would inform the account executive and
26 | the account executive would relay the message to the candidate and attempt to find a
27 | replacement candidate.  Account executives did not have authority to hire or fire

28 |

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
17

1   other account executives and did not supervise administrative support staff in the

2   offices. *Id.*

3       The Court of Appeal first considered the applicable Wage Order No. 4, which

4   sets forth the five-part test discussed above to determine whether an employee

5   qualifies for an administrative exemption.  The Court of Appealnoted that Wage

6   Order No. 4-2001 expressly incorporates certain federal regulations promulgated

7   under the Fair Labor Standards Act of 1938, including 29 Code of Federal

8   Regulations part 541.205(a) which defines the first criterion of the administrative

9   exemption: "The phrase 'directly related to management policies or general business

10  operations of his employer or his employer's customers' describes those types of

11  activities relating to the administrative operations of a business as distinguished

12  from 'production' or, in a retail or service establishment, 'sales' work.  In addition

13  to describing the types of activities, the phrase limits the exemption to persons who

14  perform work of substantial importance to the management or operation of the

15  business of his employer or his employer's customers." *Id.* at * 22

16      Second, the Court of Appeal noted that the job duties and responsibilities of

17  account executives were as follows:

18  …(2) account executives were trained in sales and evaluated on how
19  well they met or exceeded minimum sales production numbers; (3)
    account executives were primarily responsible for selling the services of
20  RHI's temporary employees to clients; (4) when the account executives
    were not either soliciting potential clients for sales or placing orders for
21  clients, they were recruiting more candidates for RHI's 'inventory,' an
22  activity which consumed about 30 percent of their time; (5) account
    executives had no role in supervising the temporary employees after
23  they were placed and no responsibility for the administrative support
    staff in the account executives' offices; (6) account executives did not
24  form policy but followed the "recipe," including the three-week rotation
25  system in performing their duties as required by headquarters; and (7)
    corporate headquarters included a human resources department,
26  marketing department, and legal department designed to support the
27  account executives' function-to focus on making sales.

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ᴸᴸᴾ

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
18

1    *Id.* at * 22.  The Court of Appeal found that the account executives did not
2    meet part one of the five part test because their duties as account executives
3    constituted sales work or production work that is "not directly related to policy
4    making or decisions pertaining to general business operations." *Id.* at *22-*23.  The
5    Court of Appeal also noted that its decision was consistent with a California
6    Department of Industrial Relations, DLSE Opinion Letter addressing whether
7    recruiters who worked in a recruiting company qualified for the administrative
8    exemption. *Id.*

9          The facts in this case are almost exactly the same as the facts in RHI, and the
10   reasoning of the Court of Appeal applies here as well.

11   **B. Class Certification is Appropriate**

12         Class certification is appropriate when: (1) the class is so numerous that
13   joinder of all members is impracticable; (2) there are questions of law or fact
14   common to the class; (3) the claims or defenses of the representative parties are
15   typical of those of the class; and (4) the representative parties will fairly and
16   adequately protect class interests.  Fed. R. Civ. P. 23(a).  Rule 23 also requires that
17   the class satisfy one of the conditions of Rule 23(b).  Here, Plaintiffs seek
18   certification under Rule 23(b)(3) because the questions of law or fact common to
19   class members predominate over any questions affecting only individual members,
20   and a class action is superior to other available methods for fairly and efficiently
21   adjudicating this controversy.  Fed. R. Civ. P. 23(b)(3).

22         The Ninth Circuit has recently clarified the approach district courts should use
23   when deciding whether to certify classes of employees where an employer
24   uniformly classifies a group of employees as exempt.  *See Vinole v. Countrywide*
25   *Home Loans, Inc.*, 571 F.3d 935, 945-948 (9th Cir. 2009); *In re Wells Fargo Home*
26   *Mortgage Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009).  In *Vinole* and
27   *Wells Fargo*, the Ninth Circuit held that district courts should consider all relevant
28   factors to class certification, including: a) the uniform application of an exemption

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
19

to employees; b) whether the employer exercised some level of centralized control including, by way of example, standardized hierarchy, standardized corporate policies and procedures governing employees, and uniform training programs; and c) uniformity in work duties and experiences that diminish the need for individualized inquiry.  *Vinole*, 571 F.3d at 946-47.  "***Where there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities*.**"  *Id.* at 946 (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008)) (emphasis added).

Federal courts in the Ninth Circuit have routinely certified classes that seek compensation based on the employer's misclassification of non-exempt employees as exempt.  *See, e.g., Krzesniak v. Cendant Corp.*, No. C 05-05156, 2007 WL 1795703, at *3 (N.D. Cal. June 20, 2007) (improper classification of branch managers at car rental chain); *Alba v. Papa John's USA, Inc.*, No. CV 05-7487, 2007 WL 953849, at *1 (C.D. Cal. Feb. 7, 2007) (improper classification of store managers at pizza delivery chain); *Whiteway v. FedEx Kink's Office and Print Services, Inc.*, No. C 05-2320, 2006 WL 2642528, at *1 (N.D. Cal. Sept. 14, 2006) (improper classification of "center managers" at shipping and print services retail chain); *see also Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 WL 2535056, at *1 (N.D. Cal. Aug. 31, 2006) (improper classification of store managers at drug store chain); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *2 (S.D.N.Y. Sept. 29, 2006) (improper classification of store co-managers and department managers at supermarket chain); *Goldman v. Radioshack Corp.*, No. Civ.A. 03-0032, 2005 WL 1124172, at *4 (E.D. Pa. May 9, 2005) (improper classification of store managers at electronics chain).

Class certification is similarly appropriate here.  Aerotek has uniformly applied its exemption to all Recruiters in California.  Further, Plaintiffs have

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
20

presented significant evidence that Aerotek exercises centralized control over Recruiters, through the use of standardized hierarchy, corporate policies and procedures, and uniform training. Finally, Plaintiffs also present the testimony of sixteen different declarants who have worked as Recruiters at eight different Aerotek locations across the State of California: Northridge, San Diego, San Jose, San Ramon, Dublin, San Marcos, Oxnard and Rosemead. These declarants worked in both the Technical Division (Contract Engineers, Science, Clinical Research, Environmental, and Energy), and Non-Technical Division (Professional Services, Administration, Commercial, and Skilled Trades). These sixteen declarants uniformly testify that Aerotek's centralized rules reflect the realities of the workplace, across offices and divisions. Adjudication of the common issues will achieve judicial economies of time, effort and expense, and will promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. *Wells Fargo*, 571 F.3d at 958 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 291, 615 (1997)). The Court should grant this motion for class certification.

## 1. The Class Is So Numerous That Joinder Of All Members Is Impracticable

To establish numerosity, a plaintiff must show that the represented class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001). However, "impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). "Because no exact numerical cut-off exists, the specific facts of each case must be examined to determine if impracticability exists." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). Cases with as few

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
21

1  as 39 potential class members have been certified in this district. *Cervantez v.*

2  *Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008).

3      Here, because there are at least 727 Recruiters, the proposed class is large

4  enough to make joinder impracticable. *See* Def.'s Responses to Pl. Marques'

5  Special Interrogs. (Nos. 4 and 5), attached as Exhibit V to Brayton Dec.; *see also*

6  Conte & Newberg, Newberg on Class Actions, § 3.5 at 247 (4th ed. 2002) ("In light

7  of prevailing precedent, the difficulty inherent in joining as few as 40 class members

8  should raise a presumption that joinder is impracticable, and the plaintiff whose

9  class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

10  Plaintiffs easily satisfy the numerosity requirement.

11  ### 2. There Are Many Questions Of Law And Fact Common To The Class

12

13      Under Rule 23(a)(2), Plaintiffs must show one or more questions of law or fact

14  common to the class. This requirement "is generally construed liberally." *Stern v.*

15  *AT&T Mobility Corp.*, 2008 WL 4382796 at *6 (C.D. Cal. Aug. 22, 2008). "The

16  existence of only a few common legal and factual issues may satisfy the

17  requirement." *Id.* (citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th

18  Cir. 1982). In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the Ninth

19  Circuit addressed the commonality requirement and held that "[R]ule 23(a)(2) has

20  been construed permissively. All questions of fact and law need not be common to

21  satisfy the rule. The existence of shared legal issues with divergent factual

22  predicates is sufficient, as is a common core of salient facts coupled with disparate

23  legal remedies within the class." *Id.* at 1019. As stated in Newberg on Class

24  Actions:

25      Rule 23(a)(2) does not require that all questions of law or fact raised
       in the litigation be common. The test or standard for meeting the
26      Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that
       is, there need be only a single issue common to all members of the
27      class. Therefore, this requirement is easily met in most cases.

28

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
22

1  Conte & Newberg, Newberg on Class Actions, § 3:10 at pp. 272-77 (4th ed. 2002);

2  *see also Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003) ("Rule 23(a)(2) has

3  been construed permissively" (quoting *Hanlon*)).

4       In this case, the requirement of a common question of law or fact is easily met.

5  Most fundamentally, all class members were subject to the same written policy of

6  misclassifying Recruiters as exempt when, according to Aerotek's written job

7  descriptions, written policies and the testimony of Aerotek employees, Recruiters

8  spend the vast majority of their time performing non-exempt tasks.  Further

9  delineated, all class members share numerous common questions of law and/or fact,

10  including, among others:

11  - Whether Recruiters are non-exempt employees under California
12    overtime laws in light of their uniform job duties and uniform functional
      role at Aerotek;
13  - Whether Aerotek's policy and practice of classifying Recruiters as
14    exempt from overtime and Aerotek's policy and practice of failing to
      pay overtime to Recruiters violates applicable provisions of California
15    law.

16       District courts have routinely certified classes of employees challenging their

17  classification as exempt, despite arguments about individualized differences in job

18  performance.  *See e.g., Cruz v. Dollar Tree Store Inc.*, 2009 WL 1458032, *9-11

19  (N.D. Cal. 2009)(Store Managers); *Krzesniak v. Cendant Corp.*, 2007 WL 1795703,

20  at *3 (the court granted plaintiff's motion for class certification where it was alleged

21  that shift managers and branch managers throughout California had been

22  misclassified); *Papa Johns USA, Inc.*, 2007 WL 953849, at *1 (C.D. Cal. Feb.7,

23  2007) (store managers at pizza delivery chain); *Whiteway v. FedEx Kinko's Office

24  and Print Services, Inc.*, No. 05-2320, 2006 WL 2642528, at *1 (N.D.Cal. Sep.14,

25  2006) (managers at shipping and print services retail chain).  Similarly, in *Tierno*,

26  2006 WL 2535056, *5-10, the court found that class treatment was appropriate

27  where the plaintiff alleged that store managers throughout California were

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1  misclassified.  The court in *Tierno* noted that Rite Aid's self-audits and study, which

2  were designed to show variations in how store managers performed specified tasks,

3  also counted as concession "that a single set of tasks is applicable to all Store

4  Managers."  *Id.* at *8.  In addition, the Division of Labor Standards Enforcement

5  supports class treatment in cases of this nature, as evidenced by, for example, its

6  October 5, 1998 Opinion Letter which found that the entire class of insurance

7  adjusters at issue in the *Bell* case, *supra*, was non-exempt.  *See* DLSE Opinion

8  Letter written by Former Chief Counsel Miles Locker dated October 5, 1998,

9  attached as Exhibit W to Brayton Dec.[82]

10  ### 3.  The Claims Of The Proposed Class Representatives Are Typical Of Those Of The Class

11

12      The Ninth Circuit held in *Hanlon* that "[t]he typicality prerequisite of Rule

13  23(a) is fulfilled if 'the claims or defenses of representative parties are typical of the

14  claims or defenses of the class.  Under the rule's permissive standards,

15  representative claims are 'typical' if they are "reasonably coextensive" with those of

16  absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at

17  1020; *Cruz*, 2009 WL 1458032 at *6 (N.D. Cal. 2009)

18      Here, the named Plaintiffs' claims are typical of those of the class.  As

19  Recruiters, the named Plaintiffs were subject to the same written job duties and

20  written recruiting procedures as the class, and they make the same claims as class

21

22  [82] State courts have also repeatedly found class treatment to be appropriate in

23  misclassification cases such as this one.  For example, in *Sav-On Drug Stores, Inc. v.*

24  *Superior Court*, 34 Cal.4th 319 (2004), the court upheld the trial court's grant of

25  class certification where operating managers and assistant managers at retail stores throughout California alleged misclassification.  Likewise, in *Bell v. Farmers*

26  *Insurance Exchange*, 87 Cal.App.4th 805 (2001), the court affirmed certification of a

27  class of insurance adjusters throughout California who claimed to have been misclassified.  The DLSE Opinion letter dated October 5, 1998 is also attached as

28  Exhibit 4 to Plaintiffs' Request for Judicial Notice.

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

members.  Thus, the predominant questions to be determined in this case are: (1)
whether the job duties of Recruiters are uniform; and (2) whether they spend the
majority of their time performing non-exempt duties.  The answer to both questions
is yes, which can and will be established through common proof.  Accordingly,
typicality is satisfied.

### 4. The Proposed Representatives And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class

Rule 23(a)(4) requires that the proposed class representatives and their counsel
must be adequate.  Adequacy has two elements: (1) that the named Plaintiffs do not
have conflicts of interest with the proposed class; and (2) that Plaintiffs are
represented by qualified and competent counsel.  *Hanlon*, 150 F.3d at 1020.  Both
elements of the adequacy requirement are satisfied here.  Plaintiffs have retained
counsel who has the expertise and resources to represent the class effectively.[83]  In
addition, both the class and the named Plaintiffs share an interest in bringing
Aerotek into compliance with wage and hour law.

### C. The Court Should Certify The Class Under Rule 23(b)(3) Because Common Issues Predominate And Because A Class Action Is The Superior Method For Resolving The Disputes

Certification of a class under Rule 23(b)(3) is appropriate where "questions of
law or fact common to the members of the class predominate over any questions
affecting only individual members, and . . . a class action is superior to other
available methods" to resolve the case.  The class claims here meet this standard.

---

[83] Schneider Wallace Cottrell Brayton Konecky LLP and Berger & Montague are
preeminent class action law firms.  Both have extensive experience in representing
employees in class and collective action litigation.  Both have extensive experience
in the litigation of wage and hour cases under both state and federal law.  *See*
Brayton Decl. Ex. 3, ¶¶ 2-4; Declaration of Shanon J. Carson, ¶¶ 2-4.

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
25

### 1. Common Questions Predominate

"When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7AA Wright, Miller & Kane §1778. The question posed by the predominance inquiry is "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

"The common questions need not be dispositive of the entire action. In other words, 'predominate' should not be automatically equated with 'determinative.'" Wright, Miller & Kane §1778 (footnote omitted). Indeed, the very use of the word "predominate" contemplates that individual issues will also be present. Thus, differences in how damages are calculated does not defeat predominance. Fed. R. Civ. P. 23, Adv. Comm. Notes, 1966 amdts. ("the need, if liability is found, for separate determination of the damages suffered by individuals within the class" does not defeat predominance); *Local Jt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("potential difficulty in proof" regarding damages does not defeat predominance).[84]

Here, common factual and legal questions predominate over any other questions. The crux of this case is whether Aerotek's Recruiters are exempt administrative employees under the California Labor Code.[85] 8 Cal. Code Regs. §

---

[84] *See also Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) ("it has been commonly recognized that the necessity for calculations of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate").

[85] Defendant maintains that other exemptions, including the executive exemption and the outside sales exemption, may also apply to Recruiters. *See* Defendant's Responses to Plaintiff Ryan DeLodder's First Set of Interrogs. (No. 14), Ex. T to Brayton Dec. Recruiters clearly are not covered by the executive exemption, which

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
26

11040(1)(A)(2).  Thus, the predominant questions to be determined in this case are: (1) whether the job duties of Recruiters are uniform; and (2) whether they spend the majority of their time performing non-exempt duties.[86]  The answer to both questions is yes, which can be established through common proof.

This case is **exactly** the situation the Ninth Circuit identified in *Wells* and *Vinole* as appropriate for certification.  The evidence shows, and Aerotek does not dispute, that all Recruiters are subject to the same policy of misclassifying Recruiters as exempt.  *See Wells Fargo*, 571 F.3d at 957 ("An internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees.").

In addition, according to Aerotek's written job descriptions and written policies, Recruiters perform the same tasks.[87]  *See id.* at 958 ("Indeed, courts have

---

requires that employees are involved in the management of some portion of the company, direct the work of at least two other employees, have hiring and firing authority and regularly exercise discretion and independent judgment.  8 Cal. Admin. Code § 11040.  Defendant cannot establish that Recruiters satisfy even one of those elements.  Likewise, Defendant has provided no evidence whatsoever that Recruiters participate in outside sales.

[86] Although the Court may consider Aerotek's defense to the extent it is relevant to a predominance finding, it must not consider the merits of the Parties' claim at the class certification stage.  *See United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, No. 09-56578, 2010 WL 22701, slip op. at 390-91 (9th Cir. Jan. 6, 2010)  "[A] court can never be assured that a plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits, and a full inquiry into the merits of a putative class's legal claims is precisely what both the Supreme Court and we have cautioned is not appropriate for a Rule 23 certification inquiry."  *Id.* (holding that district court abused its discretion by denying class certification based on the mere possibility that workers would fail to prove their theory of liability regarding meal breaks).

[87] Fowler Dep. at 78:1-3, 155:7-19, 158: 7-23, Ex. K to Brayton Decl.; Fujimoto Dep. at 43:3-6, Ex. L to Brayton Decl;. Defendant Aerotek, Inc.'s Response to Plaintiff Ricardo Marques' First Set of Requests for Admissions (Nos. 1-2), Ex. E to Brayton Decl.; *see* Aerotek Recruiter Job Descriptions, Ex. R to Brayton Decl.; Defendant

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
27

1  long found that comprehensive uniform policies detailing the job duties and

2  responsibilities of employees carry great weight for certification purposes.").[88]

3  Aerotek's job descriptions for the Recruiter position are essentially identical with

4  respect to the job duties that are described.[89]  These job descriptions make no

5  reference to differing duties or responsibilities based on the office or division to

6  which the Recruiter is assigned.  In fact, the duties of Recruiters across California

7  are so similar that Recruiters are not restricted to placing candidates within their

8  own office or division.[90]

9         Moreover, the testimony of Aerotek employees – from both Recruiters and the

10  AMs who supervise them – confirms that such policies are **realities** in the

11  workplace, and suggest a uniformity among employees that is susceptible to

12  common proof.  *See id.* at 959.  The evidence also shows that their job duties and

13  roles within Aerotek are uniform among all offices and divisions.  DBO Jerel

14  Eubanks, whom Aerotek designated as the person most qualified to testify about the

15  job duties of Recruiters in Aerotek's California offices, testified that all Recruiters

16  in California perform the same basic set of job duties.[91]  Eubanks also testified that

17  the Recruiter Handbook I contained all the "fundamentals" of Recruiting and was

18  used for training all Recruiters regardless of Division.[92]

19

20  Aerotek, Inc.'s Response to Plaintiff Ricardo Marques' First Set of Requests for

21  Admissions (Nos. 1-2), Ex. D to Brayton Decl.; Aerotek Recruiter I Handbook, Ex. P

    to Brayton Decl.

22  [88] *Id.*

23  [89] *See* Aerotek Recruiter Job Descriptions, Ex. R to Brayton Decl.; Defendant

    Aerotek, Inc.'s Response to Plaintiff Ricardo Marques' First Set of Requests for

24  Admissions (Nos. 1-2), Ex. D to Brayton Decl.

25  [90] Flanigan Dep. at 156:13-157:5, Ex. I to Brayton Decl.; Eubanks Dep. I at 91:6-16,

    92:12-23, Ex. H to Brayton Decl.; Eubanks Depo. II at 98:15-24, Ex. J to Brayton

26  Decl.; Fowler Dep. at 26:4-19, 27:17-19, Ex. K to Brayton Decl.; Fujimoto Dep. at

27  91:9-16, Ex. L to Brayton Decl.

    [91] Eubanks Dep. II at 83:11-85:8, Ex. J to Brayton Decl.

28  [92] Eubanks Dep. II at 34:12-35:25, Ex. J to Brayton Decl.

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP
                  Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
                  *DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
                                              28

1    Named Plaintiffs DeLodder and Marques testified that they applied the same

2 five step recruiting process and performed the same basic job duties even though

3 they worked as Recruiters in different divisions in different offices.[93]  Finally,

4 individual Recruiters have uniformly testified that they all used the same recruiting

5 process and performed the same job duties regardless of geographical location and

6 division.[94]  For these reasons, the Court should find that common issues

7 predominate.

8          **2. A Class Action Is Superior To Other Available Methods For The**
          **Fair And Efficient Adjudication Of This Controversy**
9

10    The class action device is by far the superior method for resolving Plaintiffs'

11 claims in this action.  This case provides a single forum to protect the rights of class

12 members who would likely otherwise be unable to pursue cases individually.  The

13 hundreds of individual actions that would be required absent a class action would be

14 inefficient and incredibly expensive, could lead to conflicting legal and factual

15 findings by a panoply of juries, and might result in harm to the interests of the class

16 members.  When conducting the superiority inquiry, courts are to make a

17 comparative evaluation of alternative mechanisms of dispute resolution.  *See, e.g.,*

18 *Hanlon*, 150 F.3d at 1023.  In employment cases like this, the alternative to a class

19 case is often no case at all.  This is in large part due to employees' understandable

20 fear of retaliation.  Class actions have been found superior where there is a large

21 volume of individual claims and there would be a strain on judicial resources if

22 individual claims were separately adjudicated.  *Id*.  Those factors indicate that a

23 class action would be superior here.  There would have to be hundreds of actions in

24 order to cover the Recruiters who would be encompassed in the proposed class, and

25

26 [93] DeLodder Depo., Ex. N to Brayton Decl., at 192:25-194:15; Fowler Depo. at 34:8-
27 15,  Ex. K to Brayton Decl.
[94] Thomas Decl. ¶ 15, Ex. 2; *see also* Eubanks Depo. II at 34:12-35:25, Ex. J to
28 Brayton Decl.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification
*DeLodder, et al. v. Aerotek, Inc.*, Case No.: CV08-06044 DMG (AGR)
29

1   adjudicating these claims individually would obviously put a great strain on judicial

2   resources.

3   **IV.   <u>CONCLUSION</u>**

4           Based upon the foregoing, Plaintiffs respectfully request that this Court grant

5   their Motion for Class Certification, and certify a class of Recruiters in California

6   from August 14, 2004 through the present.

7
                                            Respectfully submitted,
8
9   Dated: March 1, 2010                    SCHNEIDER WALLACE
                                            COTTRELL BRAYTON
10                                          KONECKY LLP
11
12                                          */s/ CLINT J. BRAYTON*
                                            Attorneys for Plaintiff
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP